UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAYON JONES, G35669,

Plaintiff,

v.

F. RUIZ, et al.,

Defendant(s).

Case No. 25-cv-06050-CRB (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(ECF No. 13)

Plaintiff Rayon Jones, a prisoner at Salinas Valley State Prison (SVSP), filed a pro se First Amended Complaint (FAC) under 42 U.S.C. § 1983 alleging that on May 30, 2024, two correctional officers at SVSP – F. Ruiz and M. Lupo – used excessive force against her.[1] Plaintiff specifically alleges that after she finished a video settlement conference in connection with a prior § 1983 action, Ruiz and Lupo "became very angry" and when she asked to speak to the captain proceeded to "grab plaintiff and use excessive force by slamming plaintiff to the ground" and injuring the right side of plaintiff's head and ear. ECF No. 9 (FAC) at 4.

On January 29, 2026, the court screened the FAC pursuant to 28 U.S.C. § 1915A and found that plaintiff's allegations, liberally construed, appear to state an arguably cognizable claim under § 1983 for use of excessive force in violation of the Eighth Amendment against Ruiz and Lupo and ordered these two defendants served.[2] Defendants now move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim against them. They also claim that they are entitled to qualified immunity. Plaintiff has filed an opposition, and defendants have filed a reply.

[1] Plaintiff uses female pronouns.

[2] The court dismissed Warden Kelly Santoro because she was "named based on her capacity as warden and it is well established that there is no liability under § 1983 solely because one is responsible for the actions or omissions of another." Jan. 29, 2026, Order (ECF No. 10) at 2 (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

**FACTS**

Unless otherwise noted, the following facts are undisputed.

On May 30, 2024, Jones was housed at SVSP. Ruiz Decl. (ECF No. 13-3) ¶ 2; Lupo Decl. (ECF No. 21) ¶ 2. After making a remote court appearance for a prior § 1983 action, Jones was informed that she would be transferred to Mule Creek State Prison (MCSP) and that her property would be collected for her. Ruiz Decl. ¶¶ 2–3; Lupo Decl. ¶¶ 2–3. At the time, Jones was utilizing a walker that had a built-in seat. Ruiz Decl. ¶ 2; Lupo Decl. ¶ 2. Ruiz and Lupo were the correctional officers assigned to watch Jones. Ruiz Decl. ¶ 2; Lupo Decl. ¶ 2.

Upon hearing the news of her transfer, Jones "became aggravated" and began asking to speak to a captain. Ruiz Decl. ¶ 4; Lupo Decl. ¶ 4; see Matsumura Decl. ¶¶3–4 (ECF 13-1) Exs. B, C (video from Ruiz's and Lupo's body worn cameras). Jones then began to slowly stand up from her walker. See Matsumura Decl. Exs. B, C; accord Jones Opp'n (ECF No. 18) at 4. As Jones began to stand, Ruiz and Lupo grabbed Jones' left and right biceps, respectively, and commanded her to take a seat. See Matsumura Decl. Exs. B, C. When Jones did not promptly comply with the officers' commands, Ruiz and Lupo forced her to the ground. See id. When taken to the ground, the right side of Jones' head hit a piece of equipment. See id.; accord Jones Opp'n at 4. After Jones was brought to the ground, "all use of force ceased" and Jones was helped back into her walker. Ruiz Decl. ¶ 8; Lupo Decl. ¶ 8; see Matsumura Decl. Exs. B, C. Ruiz's and Lupo's body worn cameras recorded the entire incident. See Matsumura Decl. Exs. B, C.

A subsequent medical examination found that besides pain and swelling on the right side of Jones' head, there were "no visible wounds" from the incident. Jones Opp'n at 14, Ex. B.

Jones alleges in her opposition, which includes a copy of her verified FAC, that Ruiz and Lupo became "very angry" before they used force to bring her to the ground, and speculates that the force was used to retaliate against her for bringing a lawsuit against a prison official. Id.

**DISCUSSION**

A. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a

United States District Court
Northern District of California

matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249-50.

B. Analysis

Defendants argue that they are entitled to summary judgment on plaintiff's Eighth Amendment excessive force claim against them and that they are also entitled to qualified immunity from damages. The court agrees.

1. Excessive Force

It is well established that the unnecessary and wanton infliction of pain constitutes cruel

and unusual punishment forbidden by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986). In the context of a prison official accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). In determining whether the use of force was wanton and unnecessary, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Id. at 7.

Here, application of the Hudson factors to the facts of the alleged incident indicates that Ruiz and Lupo used force in a good faith effort to maintain or restore discipline, rather than maliciously and sadistically to cause harm. See id. at 6–7. When Jones suddenly stood from her walker demanding to speak with a captain and refused to sit back down when ordered to do so, she "posed a threat to the institution" reasonably perceived by Ruiz and Lupo to justify the need for the application of force. See Ruiz Decl. ¶ 7; Lupo Decl. ¶ 7. After all, Jones was in an agitated state when she unpredictably stood up from her walker demanding to see and speak with a captain and refused to sit back down, and Ruiz and Lupo were expected to ensure the safety of the institution by preventing a prisoner in such an agitated state to leave their watch. See Whitley, 475 U.S. at 320 (discussing how "prison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors"). The body-worn camera footage of the incident shows that force was used only to bring Jones to the ground and restrain her after she failed to promptly comply with orders to sit back down; once Jones was brought to the ground and stopped resisting, all use of forced ceased and Jones was helped back into her seat. See Matsumura Decl., Exs. B, C. There was no gratuitous use of force by Ruiz and Lupo; they used force only to bring Jones to the ground and restrain her from leaving their watch and made efforts "to temper the severity of a forceful response." Hudson, 503 U.S. at 7. And that Jones sustained no visible wounds from the incident further indicates that force was not applied maliciously or sadistically to cause harm in violation of the Eighth Amendment. See id.; see also

Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) ("The extent of injury may also provide some indication of the amount of force applied.").

Jones alleges that Ruiz and Lupo became "very angry" before slamming her to the ground, Jones Opp'n at 14, but this is directly contradicted by the body-worn camera footage of the incident and it is well established that the court is not required to accept a plaintiff's description of events as true when video recordings show that plaintiff's claimed version of the incident is a "visible fiction." Scott v. Harris, 550 U.S. 372, 380–81 (2007) (holding that the plaintiff's version of events was "so utterly discredited by the record that no reasonable jury could have believed him"). Here, the body-worn camera footage shows that Lupo is clearly not angry. See Matsumura Decl., Ex. B. And while Ruiz's face is obscured, the footage includes audio of both Ruiz and Lupo calmly and patiently responding to Jones' questions in the moments leading up to the incident. See id. The footage also shows that Ruiz and Lupo together brought Jones to the ground and held her there briefly until she stopped resisting; they did not slam Jones to the ground. See id. Because no reasonable jury could believe that the guards were "very angry" before slamming Jones to the ground, the court will "view[] the facts in the light depicted by the videotape[s]." Harris, 550 U.S. at 381.[3] Jones' speculation that force was used in retaliation for her bringing a lawsuit against a prison official does not compel a different conclusion. Cf. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014) (mere speculation that defendants acted out of retaliation insufficient to defeat summary judgment on retaliation claim).

Under the totality of circumstances confronting Ruiz and Lupo, as evidenced by the record of the alleged May 30, 2024, incident, including body-worn camera footage of the entire incident, no reasonable jury could find that Ruiz and Lupo used force against Jones "maliciously and sadistically to cause [Jones] harm" in violation of the Eighth Amendment. Hudson, 503 U.S. at 6–7. Ruiz and Lupo are entitled to summary judgment as a matter of law on Jones Eighth Amendment excessive force claim against them. See Celotex, 477 U.S. at 323.

[3] The court similarly rejects Jones' assertion that she "was not acting disruptive," Jones Opp'n at 4, as this is directly contradicted by the video footage of her suddenly and angrily standing from her walker and demanding to speak to a captain and not sitting back down promptly after being ordered to do so, see Matsumura Decl., Exs. B, C.

2. Qualified Immunity

Ruiz and Lupo are also entitled to qualified immunity. Under Saucier v. Katz, courts must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. 533 U.S. 194, 201–02 (2001). The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over, and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.[4]

The court already determined that no reasonable jury could find based on the evidence on the record that Ruiz and Lupo used force against Jones maliciously and sadistically to cause Jones harm in violation of the Eighth Amendment. But even if it could, Ruiz and Lupo would be entitled to qualified immunity from damages because a reasonable correctional officer in their positions could have believed that their conduct was lawful under the circumstances. See id. at 201–02. As noted earlier, the body-worn camera footage of the incident shows that Jones became agitated after learning of her upcoming transfer to another prison and unexpectedly stood from her walker angrily demanding to see and speak with a captain and refused to sit back down when ordered to do so. And Ruiz and Lupo used force to bring Jones to the ground and restrain her only

[4]Although the Saucier sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

after she failed to comply promptly with orders to sit back down; once Jones was brought to the ground and stopped resisting, all use of force ceased, and she was helped back into her seat. Perhaps Ruiz and Lupo should have provided Jones with another opportunity to comply with their orders to sit back down before using force to restrain her; but in view of Jones' agitated state and sudden and unexpected standing from her walker angrily demanding to see and speak with a captain, a reasonable officer could have believed that Jones' failure to promptly comply with their orders to sit back down justified using force to restrain her in order to maintain or restore discipline. See Marquez v. Gutierrez, 322 F.3d 689, 693 (9th Cir. 2003) (correctional officer entitled to qualified immunity if reasonable officer in his position could have believed that use of force was good faith effort to maintain or restore discipline). Under the circumstances, Ruiz and Lupo are entitled to qualified immunity. See id.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (ECF No. 13) is GRANTED.

**IT IS SO ORDERED**.

Dated: July 21, 2026

CHARLES R. BREYER
United States District Judge